Loyst P. Fletcher (SBN 175539)
loyst@lpfletcherlaw.com
**LAW OFFICES OF LOYST P. FLETCHER**
555 W. 5th Street, 35th Floor
Los Angeles, CA 90013
Telephone: (310) 420-9250
Facsimile: (213) 420-7663

Loyst Fletcher, Jr., Admitted Pro Hac Vice
fletcher@loystlaw.com
**Loyst Fletcher, Jr. & Associates**
718 Beach Street
Flint, Michigan 48502-1105
Telephone: (810) 238-4410

Stuart Chandler (SBN 088969)
stuart@chandlerlaw.com
**CHANDLER LAW**
761 E. Locust Avenue, Suite 101
Fresno, California 93720
Telephone: (559) 431-7770
Facsimile: (559) 431-7778

Attorneys for Plaintiff:
ERNEST O'NEIL RANKIN BROCK by
and through his guardian ad litem KAREN NORRIS,

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST O'NEIL RANKIN BROCK by and through his guardian ad litem KAREN NORRIS, ,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF FRESNO on behalf of FRESNO COUNTY SHERIFF'S DEPARTMENT; and DOES 1-200, inclusive,<br><br>Defendants. | Case No.: 1:18-CV-01615-DAD-EPG<br><br>**MOTION FOR APPROVAL OF PROPOSED SETTLEMENT OF THE CLAIMS OF DISABLED ADULT ERNEST O'NEAL RANKIN BROCK; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF LOYST P. FLETCHER AND KAREN NORRIS IN SUPPORT THEREOF**<br><br>Date: TBD<br>Time: TBD.<br>Ctrm:<br><br>Honorable Magistrate Judge Erica Grosjean |

TO THE HONORABLE JUDGE AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on a date to be determined by the Court in Courtroom __ of the U.S. District for the Eastern District of California, Plaintiff, KAREN NORRIS, Guardian Ad Litem for ERNEST O'NEIL RANKIN BROCK, a Disabled Adult, by and through their attorneys of record, will and hereby do move this Court to approve the proposed settlement of his claims against Defendants COUNTY OF FRESNO and FRESNO COUNTY SHERIFF'S DEPARTMENT

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the attached declarations, exhibits, the file and records of the within action, and any oral or documentary evidence as may be evaluated by this Court at the hearing of this matter.

Dated: April 1, 2025

LAW OFFICES OF LOYST P. FLETCHER

By: /s/ Loyst P. Fletcher
Loyst P. Fletcher, co-counsel for
KAREN NORRIS, Guardian Ad Litem for
ERNEST O'NEIL RANKIN BROCK, a Disabled Adult

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**……………………………...………..1

I.   INTRODUCTION AND SUMMARY OF REQUEST……………………….……1

II.  COURT APPROVAL IS NECESSARY TO RESOLVE THIS REQUEST………..4

III. FACTS………………………………………………………………………………..5

    A.  THE PARTIES……………………………………………...…………………….5

    B.  THE INCIDENT……………………………………………………………….….5

    C.  INJURIES………………………………………………………...……………….6

IV.  THE INVESTIGATION, LITIGATION, AND SETTLEMENT…………………7

    A.  THE INVESTIGATION……………………………………...……………….….7

    B.  LITIGATION AND SETTLEMENT……………………………………………..8

V.   ATTORNEY'S FEES, LITIGATION COSTS, AND LIENS………………………9

    A.  ATTORNEY'S FEES……………………………………………………………10

    B.  LITIGATION COSTS…………………………………………………………..13

    C.  LIENS………………………………………………………………………..….13

VI.  ACCOUNTING OF SETTLEMENT RECORDS………………………………..13

VII. PRESERVATION OF BENEFITS…………………………………………….…..13

    A.  POOLED SPECIAL NEEDS TRUST…………………………………..………13

    B.  TERMS OF STRUCTURED SETTLEMENT…………………...……………..14

VIII. CONCLUSION……………………………………………………...……………..15

iii

1:18-CV-01615-DAD-EPG
MOTIOIN TO APPROVE PROPOSED SETTLEMENT OF CLAIMS …

# TABLE OF AUTHORITIES

**CASES**

*Dacanay v. Mendoza*, 573 F.2d 1075..................................................................................- 4 -

*Doe v. Sierra County*, 2015 WL 4757915 (E.D. Cal. 2015)................................................- 5 -

*Hagan v. California Forensic Medical Group*, 2013 WL 461501 (E.D. Cal. 2013) ..................................................................................................................................- 5 -

*Heck v. Humphrey*, 512 U.S. 477 (1994) ................................................................- 8 -, - 12 -

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ..............................................................- 11 -

*In Re Taco Bell*, 222 F.Supp3d 813 (2016)......................................................................- 12 -

*James Smith, a handicapped adult, et al. v. City of Stockton*, et al, 185 F. Supp. 3d 1242 (2016) ..............................................................................................................- 4 -

*Map v. City of Bakersfield*, 2009 WL 179771 (E.D. Cal. 2009).........................................- 4 -

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) .................................................................................................................................- 9 -

*Robidoux v. Rosengren*, 638 F.3d 1177 ..............................................................- 4 -, - 5 -,- 10 -

*Salmeron v. United States*, 724 F.2d 1357 ..........................................................................- 4 -

*The Prudential Ins. Co. of America v. AM.*, 2014 WL 7359071 (E.D. Cal. 2014) .................- 5 -

*Toscano v. City of Fresno*, 2017 WL 2483119 (E.D. Cal. 2017) .........................................- 5 -

**STATUTES**

42 U.S.C. § 1983 ................................................................................................................- 10 -

42 U.S.C. § 1988 ................................................................................................................- 10 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION AND SUMMARY OF REQUEST**

On January 17, 2018, some seven years ago, Plaintiff Ernest O'Neil Rankin Brock ("Ernest") sustained permanent and debilitating injuries while detained in the Fresno County Jail ("FCJ"). On January 16, 2018, when Ernest was 19 years old, he was arrested on an outstanding warrant for violation of PC 311.11 (Possession of Child Pornography) and arrived at the Fresno County Jail. Ernest's charges required that he be housed in protective custody ("PC") in the jail's PC Charge Unit. At the time of his classification and housing assignment, the PC housing unit was at 100% capacity. As was FCJ's custom and policy, "overflow" inmates were placed in the facility's Administrative Segregation Unit, otherwise known as "Ad Seg" designated for inmates that for one reason or another, including inmates with violent propensities, cannot be housed in a group.

Because FCJ did not require classification officers making housing decisions to review an inmate's history in the Ad Seg unit, Ernest was placed in a cell with a known assaultive inmate. That inmate attacked and strangled Ernest with a bed sheet. After an unknown length of time, he was found in his cell, not breathing, and comatose with a Glasgow Coma Scale (GCS) of 3 (severe). It took 18 minutes of CPR for FCJ personnel to restart Ernest's functioning, after which he remained in a coma for three days and unresponsive, with severe lactic acidosis, ligature marks around his neck, and a diagnosis of anoxic brain injury/strangulation. A CT of Ernest's head showed a subdural hematoma near the tentorium. (See Expert Report of Randall C. Epperson, Ph.D attached as Exhibit "C" to the Declaration of Loyst P. Fletcher ("Fletcher Decl." filed herewith). As a result of his injuries, Ernest will require lifetime assistance to care for himself.

1

Currently, Ernest's only support is Medi-Cal, CalFresh, Supplemental Security Income ("SSI") and his immediate family. After his release from the Community Regional Medical Center, Ernest lived with and was cared for by his paternal grandmother, Karen Norris, whom this Court appointed his guardian ad litem on November 21, 2019. Ms. Norris moved to West Virginia in or about July of 2023 to care for her elderly mother. Ernest has since lived between the homes of his natural father, Ernest Brock senior, and natural mother, Tabatha Rankin, who have continued to provide for Ernest's needs to date.

As indicated, Ernest's TBI is classified as "severe." He exhibits epileptic seizures, confusion, inability to multitask, periods of anger, difficulty learning new tasks, memory impairment, both short and long term – he has no recollection of any events after age 13 or 14, bipolar disorder, depression, elevated sensitivity to noise, diminished sense of taste, and is physically handicapped. Ernest cannot drive and has difficulty with gait and balance, especially when it comes to navigating steps and uneven surfaces. He has been prescribed Levetiracetam, an epileptic seizure medication that he will have to take for the rest of his life. Due to his cognitive impairment, Ernest cannot remember to take his medication or maintain proper hygiene.

It is respectfully requested that the Court approve the settlement the parties reached with the assistance of Hon. Justice Stephen J. Kane (Ret.). The Defendants have agreed to pay a total of $3,000,000 to resolve all claims in this litigation, which has been approved by the Fresno County Board of Supervisors. (Exhibit "B"). Plaintiffs submit that the settlement should be apportioned as follows:

1. Attorney's-fees of $1,200,000.00 (40%)
2. Litigation Costs of $180,525.81

2

3. Payment of $1,000,000.00 to PASSCorp fund future periodic payments through a structured settlement annuity contract that the periodic payments will in turn, be payable to Legacy Enhancement Trust as Trustee ("TTEE") fbo Ernest O'Neil Rankin Brock in monthly payments for life.

4. Payment to Ernest's paternal grandmother and Guardian Ad Litem, Karen Norris, for services provided/expenses incurred: $20,000

5. Payment to Ernest's natural mother, Tabitha Rankin, for services provided/expenses incurred: $20,000

6. Payment of $579,474.19 to Legacy Enhancement Trust to establish a Pooled Special Needs Trust ("PSNT"). This includes the fees to be charged by the law firm of Hunsberger Dunn that works with Legacy Enhancement Trust in establishing the trust; funds available to pay, if required, Medi-Cal to satisfy its lien, funds to purchase a residence for Mr. Brock and funds to meet initial expenses in setting up the home.

This petition includes a full accounting of all settlement proceeds. The Medi-Cal claim for reimbursement, as of the date of settlement, remains outstanding, resolution of which may take several more weeks or even months. The PSNT will withhold the full Medi-Cal claim until the matter is resolved, at which point the undersigned Plaintiffs' counsel will seek a court order directing the PSNT to pay Medi-Cal from the funds being held in the trust pursuant to *Cal. Welfare and Institutions* Code Section 14124.76. It is anticipated this order will be issued by the Fresno County Superior Court Probate division, which will have jurisdiction over the PSNT.

Plaintiffs respectfully submit that this settlement is fair and reasonable.

**III. COURT APPROVAL IS NECESSARY TO RESOLVE THIS CASE**

Court approval is necessary to settle the claims of minors and incompetent people. (See *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). This motion is also required by Local Rule 202(b). In performing its duty, the Court is required to "independently investigate and evaluate any compromise or settlement of a minor or disabled adult's claims to assure itself that the minor or disabled adult's interests are protected, even if the settlement has been recommended or negotiated by a parent or guardian ad litem." (*Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983).)

The Ninth Circuit has explained that district courts should "limit the scope of their review to the question whether the net amount distributed to plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the Plaintiff's specific claim, and recovery in similar cases. (*Robidoux v. Rosengren*, 638 F.3d 1177, 1181-1182 (9th Cir. 2011).)

Based upon a review of the following civil rights settlements in cases involving minors and disabled adults, Plaintiffs submit that the proposed settlement in this case is fair and reasonable: In *James Smith, a handicapped adult, et al. v. City of Stockton*, et al, 185 F. Supp. 3d 1242 (2016) (E.D. Cal. 2016), the court approved a settlement of $307,500 for a developmentally delayed adult and his minor sister, who witnessed the events, for civil rights claims against the city and a police officer, alleging that the officer unlawfully tackled him, restrained him, sicced his police dog on him, and arrested him without probable cause. Order In *Map v. City of Bakersfield*, 2009 WL 179771 (E.D. Cal. 2009), the court approved a settlement of $95,000 for a minor who was attacked by a police dog and bitten on his face and ear in violation of the child's Fourth and Fourteenth Amendment rights. In *Toscano v. City of Fresno*, 2017 WL 2483119 (E.D. Cal. 2017), the court approved a total settlement in the amount of $675,000 for a minor who brought civil rights claims against the city for the wrongful death of his father, who was killed when a Fresno City police officer ran him over during a high-speed pursuit while failing to use his patrol vehicle's emergency lights.

4

The Ninth Circuit also confirmed in the *Robidoux* decision that the approval of a minor's or incompetent person's settlement is supposed to be made "without regard to the proportion of the total settlement value designated/or ...plaintiffs counsel." (*Robidoux v. Rosengren*, 638 F.3d 1177 at 1182, see also this Court's orders in *Doe v. Sierra County*, 2015 WL 4757915 (E.D. Cal. 2015); *The Prudential Ins. Co. of America v. AM.*, 2014 WL 7359071 (E.D. Cal. 2014); and *Hagan v. California Forensic Medical Group*, 2013 WL 461501 (E.D. Cal. 2013).)

**III. FACTS**

    **A. THE PARTIES**

Petitioner Karen Norris is Ernest's paternal grandmother. She is a competent adult who retired in 2021 after 23 years as an administrative manager with the City of Fresno PARCS Department. After sustaining his injuries, Ernest lived with Ms. Norris until August of 2023, when she moved out of state to care for her elderly mother in West Virginia. Since her relocation, she has continued to provide financial support to her grandson, including, but not limited to, depositing $1,000 a month into his personal bank account. This court appointed Ms. Norris as the guardian ad litem for Ernest on November 21, 2019.

    **B. THE INCIDENT**

Ernest was arrested on an outstanding warrant and arrived at the Fresno County Jail on January 16, 2018. Ernest's charges, PC 311.11 (Possession of Child Pornography), required that he be housed in protective custody ("PC") in the jail's PC Charge Unit. At the time of his classification and housing assignment, the PC housing unit was at 100% capacity. As was FSJ's custom and practice, "overflow" inmates were placed in FSJ's Administrative Segregation Unit, otherwise known as "Ad Seg," designated for inmates that for one reason or another, including inmates with violent propensities, cannot be housed in a group.

5

1:18-CV-01615-DAD-EPG
MOTION TO APPROVE PROPOSED SETTLEMENT OF CLAIMS ...

On January 17, 2018, then Classification Officer, now Corporal, Julio Rodriquez, in keeping with FSJ's custom, policy and procedure, made the decision to place Ernest in a cell with inmate, Robert Luna ("Luna"), who had been placed there for his extensive history of assaultive conduct. FCJ had no policy within its Ad Seg unit requiring Mr. Rodriquez to review Luna's history in the facility before making a decision to place him in a cell with an inmate in Ad Seg because the unit he should have been assigned was at capacity.

At Approximately 8:40 p.m. on January 19, 2018, deputies were alerted by inmates that there was a fight in the cell housing Luna and Ernest. When deputies responded to the cell, they found Ernest unconscious and unresponsive, lying on the floor of the cell. Officers then dragged an unconscious Ernest from the cell and handcuffed him while waiting for jail medical providers to respond and assist. Upon arrival, jail medical providers determined Ernest's condition was critical and required transport to Community Regional Medical Center for treatment.

**C. INJURIES**

As stated, Ernest has been diagnosed with an anoxic brain injury that is classified as "severe." He exhibits epileptic seizures, confusion, inability to multitask, periods of anger, difficulty learning new tasks, memory impairment, both short and long term – he has no recollection of any events after age 13 or 14, bipolar disorder, depression, elevated sensitivity to noise, diminished sense of taste, and he is physically handicapped. Ernest cannot drive and has difficulty with gait and balance, especially when it comes to navigating steps and uneven surfaces. He has been prescribed Levetiracetam, an epileptic seizure medication that he will have to take for the rest of his life. Due to his cognitive impairment, Ernest cannot remember to take his medication or maintain proper hygiene.

## IV. THE INVESTIGATION, LITIGATION AND SETTLEMENT

### A. THE INVESTIGATION

When possible, a significant amount of effort should go into a civil rights case against a law enforcement agency prior to serving a state government tort claim and ultimately filing a complaint in state or federal court. After an extensive initial meeting with the clients, attorneys from the Law Offices of Loyst P. Fletcher and Loyst Fletcher, Jr. & Associates began investigating. A police report and medical records were obtained, read, and re-read. Counsel made multiple trips to Fresno to meet with the clients, gather evidence, and interview witnesses.

Prior to the incident, Ernest was arrested and charged with PC section 311.11 (Possession of Child Pornography). Given the Supreme Court's 1993 opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994), that may bar civil rights claims brought by persons who plead guilty or are convicted of anything, it was important that Ernest not be convicted or plead guilty or no contest to even the slightest infraction, especially given the rather stigmatizing nature of the charges. After he was hospitalized, Ernest's family posted bail and retained Plaintiffs' counsel Loyst P. Fletcher, III to represent Ernest in criminal case No. F1790134.

Mr. Fletcher immediately obtained Ernest's medical records related to his injuries and retained a physician, Dr. Brian C. Payne, for purposes of providing an opinion regarding the impacts of the injuries Ernest sustained, specifically anoxic brain injury/agitation ("TBI"), on his cognitive functioning. Mr. Fletcher presented the medical records and Dr. Payne's report to the Fresno County District Attorney's office, who after extensive negotiations agreed to voluntarily dismiss the charges pursuant to PC section 1367(a) on the grounds that Ernest was not competent.

The Fletcher firms also investigated the incident and the involved officers, contacting several since released inmates incarcerated in FCJ in or about the same time as Ernest and his attacker who were witnesses to the attacker's prior history of altercations, the subject incident, and subsequent remedial measures taken by FCJ personnel.

**B.   THE LITIGATION AND SETTLEMENT**

Pursuant to California *Government Code* section 910, et seq., on June 11, 2018, counsel for Plaintiffs served a government tort claim on the County of Fresno to preserve all state related claims, including claims based upon both California and federal civil rights statutes. The County rejected the claim on September 11, 2018. Plaintiffs timely filed suit in Fresno County Superior Court on October 12, 2018, and anticipated aggressive contested and protracted litigation. On November 21, 2018, almost immediately after the complaint was served, Defendants removed the matter to Federal District Court.

In or about August of 2019, Defendants proposed mediation. On October 15, 2019, Pro Hac Vice counsel Loyst Fletcher, Jr. traveled from Michigan, and Loyst P. Fletcher, III traveled from Los Angeles so the parties could mediate the case in Fresno with the Hon. Justice Steve M. Vartabedian (Ret). Despite both sides' significant efforts, knowing the litigation would be complex and costly, the case did not settle.

Due to the complex and labor-intensive nature of this case, in or about April of 2020, the Fletcher firms brought in local co-counsel Stuart Chandler to assist. Extensive discovery was conducted, including a several thousand-page document production followed by comprehensive meet and confer correspondence, and a January 13, 2021 informal discovery conference before Magistrate Judge Erica P. Grosjean. Defendants completed the depositions of Ernest, his mother Tabatha Rankin, his father Ernest Brock II, and grandmother and Guardian Ad Litem, Karen Norris. Plaintiffs in turn deposed officers and FCJ personnel Tom Gattie, Stephen McComas, Raul Urzua, Karen Nunez, Ned Barton, Russell Duran, Troy Burks, and Mary Nichols.

1    At the close of fact discovery, the parties completed expert discovery. Plaintiffs
2  retained and designated criminal justice consultant Richard S. Bryce, economist Roman
3  Garagulagian, Ph.D., neuropsychologist Randal C. Epperson, PhD., life care planner Karen L.
4  Aznavoorian, M.A., and vocational rehabilitation expert Rick Sarkisian. Expert reports were
5  exchanged and all of the parties' respective experts were deposed.
6    Thereafter, on March 22, 2022, Defendants filed a Motion for Summary Judgment. In
7  response, Plaintiffs filed a detailed and comprehensive 25 page opposition, which articulated,
8  pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658
9  (1978), that FCJ was liable for constitutional violations under 42 U.S.C. section 1983 because
10 the evidence established a FCJ policy or custom resulted in Ernest's injury. As a result of the
11 backlog caused by the Covid epidemic, and subsequent unassigned status of the case, this
12 Court's ruling on Defendants' motion remained pending for over 2 years.
13   In or about December of 2024, the parties conferred and agreed it would be prudent to
14 make another attempt at mediation. The Hon. Justice Stephen J. Kane (Ret.) mediated the case
15 on January 31, 2025. Both sides again put forth significant efforts to resolve the case,
16 acknowledging the uncertainty of the Court's ruling on Defendants' motion for summary
17 judgment. After a full day of mediation, Defendants agreed to pay $3,000,000.00 to settle all
18 Ernest's claims.

**V. ATTORNEYS' FEES, LITIGATION COSTS, AND LIENS**

20   Even though settlements are supposed to be approved "without regard to the proportion
21 of the total settlement value designated for... plaintiffs counsel" (*Robidoux v. Rosengren*, 638
22 F.3d at 1182), the undersigned submits that the three law firms' 40% contingency fee is well
23 deserved. The Fletcher firms have been working on this case since February of 2018, and the
24 Chandler law firm since April of 2020. The litigation resolved because of the extensive amount
25 of work these firms put into it both before and after the lawsuit was filed. Ernest's grandmother
26 and guardian ad litem has reaffirmed her agreement and support of counsel's 40% contingency
27 fee. She explains "I cannot say enough about what they have done for Ernest and our family."
28

9

(Declaration of Karen Norris, ¶ 10.)

## A. ATTORNEYS' FEES

Civil rights litigation is difficult and risky to pursue. Police officers are generally given the benefit of the doubt when it comes to their interactions with the public. Many, if not most, cases against jails brought on behalf of inmates are not successful. Given the difficulty of pursuing these matters, attorney fees in 42 U.S.C. § 1983 cases are allowed to a prevailing plaintiff as an enticement, pursuant to 42 U.S.C. § 1988. "The purpose of section 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." (*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).)

Plaintiffs' counsel, the Fletcher firms and Stuart R. Chandler, are well established personal injury and civil rights attorneys in Michigan and California. As explained in greater detail in the declaration of counsel submitted, herewith, Loyst P. Fletcher, III. ("Fletcher III), has over 30 years of experience as a trial lawyer across several practice areas, including employment, real estate, personal injury, and criminal defense. In his employment practice, Fletcher III regularly advises clients on all aspects of the employment relationship, including policies and best practices, workplace investigation, discrimination, harassment, retaliation, wrongful termination, wage and hour compliance, employee classifications, and the California Labor Code. Fletcher III has served as an adjunct law professor for over 20 years teaching courses in trial advocacy, evidence, civil procedure, employment law, e-discovery and torts, focusing on practical skills and legal theory. As an adjunct professor, Fletcher III was recognized as Professor of the Year in the 2012- 2013 school year by students for outstanding teaching effectiveness and commitment to their educational growth, and has mentored students in trial preparation and advocacy, fostering a supportive learning environment that encourages participation and critical thinking. Fletcher III has significant litigation experience at the administrative, trial and appellate levels, including jury trials in both California state and federal courts, with an emphasis on high profile and high exposure cases. His firm's clientele consists of small to midsize corporations and individuals throughout the U.S. and also Indonesia.

Loyst Fletcher, Jr. has over 48 years of experience as both a trial and corporate lawyer. He has tried cases in both Federal and State Courts in Michigan, Ohio, Mississippi, California, and Minnesota. Throughout his career, he has secured several multi-million-dollar verdicts and settled numerous cases in the same range. His practice primarily focuses on personal injury cases, which often involve incidents in jail and police misconduct.

Stuart R. Chandler has been a civil trial attorney since passing the bar and joining the Fresno firm of Baker, Manock and Jensen in 1979. Since establishing his own practice in 1985 he has represented plaintiffs in a wide range of personal injury and wrongful death cases. Mr. Chandler has tried several dozen cases to verdict, including eight figure verdicts in Tulare and Yolo Counties and a mid-seven figure jury medical malpractice verdict in Fresno County against Kaiser. In 2001 he was asked to join the Board of Governors of the Consumer Attorneys of California and has remained on that Board since. He has been lead or co-counsel in over 20 wage and hour class cases in Central and Northern California over the past 15 years. In 2017 he was asked to take the role of lead trial counsel for plaintiffs in the class action trial of *In Re Taco Bell, 222 F.Supp3d 813 (2016)*. Following the verdict of plaintiffs, Magistrate Judge Boone's order awarding attorney fees set the fee for Mr. Chandler's work at an hourly rate higher than any other attorney's hourly rate in the Eastern District at that time. More recently, his practice has including representing plaintiffs in excessive force cases, including the two of the three largest settlements the City of Fresno has paid in such cases.

The undersigned, with other attorneys from these firms, traveled from Michigan and Los Angles to Fresno on multiple occasions from 2019 to 2022 to meet and interview witnesses and gather evidence and information. The Fletcher firms also investigated the incident and the involved officers, contacting several since released inmates incarcerated in FCJ in or about the same time as Ernest and his attacker who were witnesses to the attacker's prior history of altercations, the subject incident, and subsequent remedial measures taken by FCJ personnel.

Prior to the incident, Ernest was arrested and charged with PC section 311.11 (Possession of Child Pornography). Given the Supreme Court's 1993 opinion in *Heck v. Humphrey*, 512 U.S.

11

477 (1994), that may bar civil rights claims brought by persons who plead guilty or are convicted of anything, it was important that Ernest not be convicted or plead guilty or no contest to even the slightest infraction, especially given the rather stigmatizing nature of the charges. After he was hospitalized, Ernest's family posted bail and retained counsel for Plaintiffs, Loyst P. Fletcher, to represent Ernest in criminal case No. F1790134. Mr. Fletcher immediately obtained Ernest's medical records related to his injuries and retained a physician, Dr. Brian C. Payne, for purposes of providing an opinion regarding the effects of the injuries Ernest sustained, specifically anoxic brain injury/agitation ("TBI"). Mr. Fletcher presented the medical records and Dr. Payne's report to the Fresno County District Attorney's office, who after extensive negotiations agreed to voluntarily dismiss the charges on the grounds that Ernest was not competent pursuant to PC section 1367(a).

Following the proposed settlement, Plaintiffs' attorneys have consulted with experts and private trustees to ascertain the best way to preserve Ernest's settlement proceeds as well as his eligibility for the SSI benefits he receives.

The Defendants' willingness to enter into this settlement and the size of the settlement are undoubtedly attributable to Plaintiffs' counsel's respective reputations and their firms' extensive preparation. It is respectfully requested that the Court approve Plaintiffs' counsel's 40% contingency fee. As explained in the declarations of counsel filed in support of this motion, the 40% contingency fee is commensurate with what would have been charged to a client had Plaintiffs' counsel collectively prosecuted this action as an hourly case based upon their reasonable hourly fees. Federal Court's in the Eastern District have approved this contingency fee structure in similar cases. Attached hereto is as Exhibit "F" to the accompanying Declaration of Loyst P. Fletcher is a true and correct copy of the Hon. Morrison C. England's decision approving a proposed settlement and Plaintiffs' attorney's 40% contingency fee in *Smith v. City of Stockton*, supra., Case No. 2:15-CV-02511-MCE-AC, United

States District Court, E.D. California (185 F. Supp. 3d 1242). It is notable that unlike the prolonged and protracted nature of this litigation, the Smith case settled shortly after it was filed. Attached hereto as Exhibit "G" is a true and correct copy of Fresno Superior Court judge Tyler Tharpe's order in *Johnson, et al v. City of Fresno*, Fresno Superior Court Case No. 21CECG00057, approving a minor's compromise in the amount of $500,000 and granting Plaintiffs' counsel Stuart R. Chandler's 40 percent contingency fee.

### B. LITIGATION COSTS

The litigation costs in this case total $180,525.81 (Exhibit "E" to the accompanying Declaration of Loyst P. Fletcher).

### C. LIENS

Ernest is a Medi-Cal beneficiary. The Medi-Cal reimbursement remains outstanding. Plaintiffs propose that the trust withhold the funds to pay for the Medi-Cal reimbursement pursuant to the provisions of California's *Welfare and Institutions* Code section 14124.72.

## VI. ACCOUNTING OF SETTLEMENT PROCEEDS

| | |
|---|---|
| Gross Settlement: | $ 3,000,000.00 |
| Less Attorney Fees: | $1,200,000.00 |
| Less Litigation Costs: | $180,525.81 |
| Less Reimbursement to Karen Norris: | $20,000 |
| Less Reimbursement to Tabatha Rankin | $20,000 |
| Less Payment for Structured Settlement: | $1,000,000.00 |
| Remaining balance used to fund PSNT. | $579,474.19 |

## VII. PRESERVATION OF BENEFITS

### A. POOLED SPECIAL NEEDS TRUST

Ernest receives SSI benefits. His benefits are "needs based" and he will become ineligible for SSI payments and for Medi-Cal benefits if he has more than $ 2,000.00 at the end of any given month.

13

The Social Security Administration allows beneficiaries to maintain their benefits if their assets are placed into a "pooled special needs trust" Such trusts impose particular limitations on how the trust corpus is allowed to be spent. The spending restrictions, record keeping, and biannual reporting requirements make these trusts too difficult for most lay people to administer. To ensure the proper administration of the special needs trust for Ernest's benefit, it is respectfully requested that the court order a disbursement of $579,474.19 to Legacy Enhancement Trust to cover the costs of setting up a PSNT for Ernest, the expenses of disability estate planning expert Bryan Beard of Hunsberger Dunn, in preparing the petition to create the trust, funds available to pay, if required, Medi-Cal to satisfy its lien, funds to purchase a residence for Mr. Brock, and funds to meet initial expenses in setting up the home.

**B.     TERMS OF STRUCTURED SETTLEMENT**

Sage Settlement Consultants' structured settlement proposal provides as follows:

"$1,000,000.00 payable by the Defendant COUNTY OF FRESNO to PASSCorp for the funding of an annuity policy through The Prudential Insurance Company of America for the benefit of Ernest O'Neil Rankin Brock, yielding the periodic payments (hereinafter "Periodic Payments") described below.

Periodic payments to Legacy Enhancement Trust as TTEE fbo Ernest O'Neil Rankin Brock ("Payee") made according to the Schedule of Payments as follows (the "Periodic Payments"):

$3,030.00 for the life of Ernest O'Neil Rankin Brock, payable monthly, guaranteed for 40 year(s) which is 480 payments, beginning on 08/01/2025, increasing at a rate of 2.00% compounded annually, with the last guaranteed payment on 07/01/2065.

All sums set forth herein constitute damages on account of personal, physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

14

The future payment amounts outlined above are guaranteed based upon a projected annuity purchase date of July 1, 2025. Any delay in funding the annuity may result in a delay of the payment dates or change in payment amounts that shall be recorded in the Settlement Agreement and Release, Qualified Assignment document and Annuity Contract without the need of obtaining an amended Motion/Court Order up to 90 days after the original purchase date.

Assignment: COUNTY OF FRESNO's obligation to make the periodic payments described herein shall be assigned to Prudential Assigned Settlement Services Corporation (PASSCorp) ("Assignee"), through a Qualified Assignment and funded by an annuity contract issued by The Prudential Insurance Company of America ("Annuity Issuer"), rated A+XV by A.M. Best.

Any payments made after the death of Ernest O'Neil Rankin Brock shall be made to natural father, Ernest Brock senior, and natural mother, Tabatha Rankin, paid equally or the survivor equally. Otherwise, payments will be paid to the Estate of Ernest O'Neil Rankin Brock. Ernest O'Neil Rankin Brock's legal guardian may submit a change of beneficiary in writing to the Assignee. The designation must be in a form acceptable to the Assignee."

## VIII. CONCLUSION

In light of the severe and lifelong injuries Ernest has endured as a result of the Defendants' actions, the proposed settlement offers a reasonable and fair resolution to this complex and tragic case. The settlement is structured to ensure that Ernest receives the necessary financial support for his ongoing medical care, future living expenses, and quality of life, while providing for the establishment of a Pooled Special Needs Trust to preserve his eligibility for public assistance. This resolution, reached with the assistance of Hon. Justice Stephen J. Kane (Ret.), has been thoroughly reviewed and approved by the Fresno County Board of Supervisors and is in the best interest of Ernest, who has suffered irreparable harm. Given the circumstances and the challenges that lie ahead for Ernest, Plaintiffs respectfully request that the Court approve

this settlement as it is both equitable and necessary to secure Ernest's future well-being.

DATED: April 1, 2025                    LAW OFFICES OF LOYST P. FLETCHER

                                        By: _____
                                            Loyst P. Fletcher, Esq.
                                            Attorney(s) for Plaintiff,
                                            KAREN NORRIS, Guardian Ad Litem for
                                            ERNEST O'NEIL RANKIN BROCK, a
                                            Disabled Adult