UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST O'NEIL RAHKIN BROCK, *guardian ad litem Karen Norris*,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF FRESNO ON BEHALF OF FRESNO COUNTY SHERIFF'S DEPARTMENT,<br><br>Defendant. | Case No.  1:18-cv-01615-LHR-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR APPROVAL OF PROPOSED SETTLEMENT BE GRANTED, IN PART<br><br>(ECF Nos. 80, 88)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

In this civil action, Plaintiff Ernest O'Neil Rahkin Brock, an incompetent adult, proceeds through his guardian ad litem, and grandmother, Karen Norris. He brings federal and state law claims, alleging that Defendant County of Fresno is liable for the injuries he suffered after a fellow inmate at the Fresno County Jail assaulted him.

The parties have settled the case, and Plaintiff now moves the Court to approve his proposed settlement. (ECF Nos. 80, 88). Defendant has filed a response that requests assurances that any liens are satisfied before the settlement amount is paid but does not oppose the motion. (ECF No. 84). The presiding District Judge has referred the motion for the preparation of findings and recommendations. (ECF No. 83).

Upon review, the Court finds the proposed settlement to be fair and reasonable and in Plaintiff's best interests, with the exception that the Court will recommend that the amount of attorney's fees paid out of the settlement be reduced.

\\\

1

**I.      BACKGROUND**

Plaintiff filed this case in October 2018 in the Fresno County Superior Court. (ECF No. 1-1, p. 4). On November 21, 2018, Defendant removed the case. (ECF No. 1). On November 21, 2019, the previously assigned District Judge granted Plaintiff's motion requesting that his grandmother, Karen Norris, be appointed as his guardian ad litem. (ECF No. 21).

The complaint brings Federal and state law claims:

(1) 42 U.S.C. § 1983 (violation of civil rights and violation of U.S. Constitutional rights under the 8th Amendment);

(2) 42 U.S.C. § 1983 (negligent hiring, training, staffing and supervision);

(3) negligence;

(4) failure to summon medical aid (Cal. Gov. Code § 845.6);

(5) negligent infliction of emotional distress under California law; and

(6) intentional infliction of emotional distress under California law

(ECF No. 1-1, p. 5).[1]

Relevant here, the complaint alleges as follows.

Plaintiff was arrested on January 18, 2018, on possession of child pornography charges and incarcerated at the Fresno County Jail. (*Id.* at 9). Correctional officers were required to place Plaintiff in segregation to protect him from inmates who might harm him because of the nature of his charges. (*Id.*).

The next day, Plaintiff called his mother, Tabatha Rankin, and told her that he feared for his life because he believed that correctional officers had intentionally placed a deranged inmate in his cell, stating that his cellmate was banging on the walls and bars, rambling, and acting in a psychotic manner. (*Id.* at 10). That same day, Plaintiff's cellmate attacked him and attempted to murder him by strangulation. (*Id.*). Despite being seriously injured in the attack, including being placed on life support, Plaintiff ultimately regained consciousness. (*Id.*). However, he suffered severe and permanent brain damage. (*Id.*).

Defendant moved for summary judgment on Plaintiff's claims on March 22, 2022. (ECF No. 55). This motion remains pending, along with related filings. (ECF Nos. 63 (notice of request to seal), 66 (motion to strike)).

---

[1] The Court has made minor alterations, such as changing capitalization, to some of Plaintiff's quotations throughout these findings and recommendations without indicating each change.

On February 4, 2024, the parties notified the Court that they settled this case.[2] (ECF No. 77).

On April 1, 2025, Plaintiff filed a motion for approval of his proposed settlement. (ECF No. 80). Supporting the motion are the declaration of Plaintiff's counsel, Attorney Loyst P. Fletcher; the declaration of the guardian ad litem Karen Norris; a copy of the settlement agreement; a neuropsychological evaluation of Plaintiff; various pictures of Plaintiff and his family; a list of costs incurred by Plaintiff's counsel; and copies of filings in other cases that Plaintiff relies on. (ECF Nos. 80, 82).

On April 4, 2025, Defendant filed a response to the motion, stating as follows:

> A material condition of the settlement is that any liens by Medi-Cal or other agencies or entities will be paid from the proceeds of the settlement. The County of Fresno needs assurance that the Medi-Cal lien and any other liens are satisfied before any of the other settlement proceeds are disbursed.

(ECF No. 84, p. 1). Besides this request for assurance, Defendant does not oppose the motion for approval of the settlement.

On April 25, 2025, the Court held a telephonic hearing on motion and issued an order permitting Plaintiff to file a supplement to address issues raised during the hearing, including support for the amount requested for attorney's fees. (ECF No. 87). Plaintiff timely filed his supplement on May 30, 3025, which includes additional supporting evidence discussed below. (ECF No. 88). Accordingly, the matter is now ripe for decision.

## II. TERMS OF THE SETTLEMENT

In pertinent part, the settlement agreement calls for Defendant to pay Plaintiff $3 million to satisfy any and all claims related to the incident at issue. (ECF No. 80-1, p. 15). This settlement also releases Defendants from any request for attorney's fees or costs. (*Id.*). Plaintiff asks that the $3 million settlement be disbursed as follows:

> 1. Attorney's fees of $1,200,000.00 (40%)
> 2. Litigation Costs of $180,525.81
> 3. Payment of $1,000,000.00 to PASSCorp fund future periodic payments through a structured settlement annuity contract that the periodic payments will in turn, be payable to Legacy Enhancement Trust as Trustee ("TTEE") fbo Ernest O'Neil

---

[2] The parties' settlement agreement states that "[t]he parties will ask the court not to rule on the pending MSJ." (ECF No. 80-1, p. 13).

3

Rankin Brock in monthly payments for life.

4. Payment of $579,474.19 to Legacy Enhancement Trust to establish a Pooled Special Needs Trust ("PSNT"). This includes the fees to be charged by the law firm of Hunsberger Dunn that works with Legacy Enhancement Trust in establishing the trust; funds available to pay, if required, Medi-Cal to satisfy its lien, funds to purchase a residence for Mr. Brock and funds to meet initial expenses in setting up the home.

(ECF No. 80, pp. 6-7).[3]

The Court will address the fairness and reasonableness of the proposed settlement, along with the disbursement of the funds, in detail below.

### III. LEGAL STANDARDS

Local Rule 202 governs approval of an incompetent person's settlement. It states, in relevant part:

> (b) Settlement. No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise.
>
> (2) Approval in All Other Actions. In all other actions, the motion for approval of a proposed settlement or compromise shall be filed and calendared pursuant to L.R. 230. The application shall disclose, among other things, the age and sex of the minor or incompetent, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court. The Court may also require the filing of experts' reports when none have previously been prepared or additional experts' reports if appropriate under the circumstances.

Local Rule 202(b)(2).

Further, there is a separate requirement for an attorney to disclose their interests:

> (c) Disclosure of Attorney's Interest. When the minor or incompetent is represented by an attorney, it shall be disclosed to the Court by whom and the terms under which the attorney was employed; whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received

---

[3] While the motion originally requested payment of $40,000 total (or $20,000 each) to Plaintiff's mother and grandmother, Plaintiff has withdrawn that request in his supplement. (ECF No. 88, p. 4).

4

or expects to receive any compensation, from whom, and the amount.

Local Rule 202(c).

Lastly, there is a provision regarding the disbursement of funds to an incompetent person.

> Whenever money or property is recovered on behalf of a minor or incompetent person, the money or property will be (1) disbursed to the representative pursuant to state law upon a showing that the representative is duly qualified under state law, (2) disbursed otherwise pursuant to state law, or (3) disbursed pursuant to such other order as the Court deems proper for the protection of the minor or incompetent person.

Local Rule 202(e).

Federal Rule of Civil Procedure 17 also imposes on district courts a special duty to safeguard the interests of incompetent persons, providing that a "court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2); *see Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (discussing special duty in context of minors).

In the context of proposed settlements in suits involving incompetent persons, the district court's special duty requires it to "conduct its own inquiry to determine whether the settlement serves the best interests of the [incompetent person]." *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see Palomares by & through Garcia v. City of Arvin*, No. 1:21-CV-01745-JLT-CDB, 2023 WL 6308077, at *2 (E.D. Cal. Sept. 28, 2023) (applying *Robidoux* inquiry to cases with incompetent persons).

### IV. DISCUSSION

#### A. Local Rules

The Court begins with the requirements under its Local Rules. Consistent with Local Rule 202(a), the previously assigned District Judge appointed Plaintiff's grandmother, Karen Norris, as his guardian ad litem. (ECF No. 21).

Under Local Rule 202(b)(2), the Court understands that Plaintiff is about 26 years old and a male.[4] (ECF No. 80, p. 5). As for the nature of the causes of action being settled, the motion and settlement agreement indicate that all claims raised in the complaint—the § 1983 and state law

---

[4] The motion states that Plaintiff was 19 years old on January 16, 2018, which would make him about 26 years old now. (ECF No. 80, p. 5).

5

claims—are being settled. (ECF No. 80-1, p. 15). The motion summarizes the relevant facts noted above from the complaint—*i.e.*, Plaintiff was assaulted by a fellow inmate at the Fresno County Jail after he was not properly segregated based on his possession of child pornography charges. (*Id.* at 5).

As for the manner in which the compromise amount or other consideration was determined and the disbursement of funds, the motion states that, after extensive discovery, including consultation with various experts, the parties agreed to mediate the case before "[t]he Hon. Justice Stephen J. Kane (Ret.)" on January 31, 2025, which resulted in a $3 million settlement. (*Id.* at 13).

Plaintiff requests that this settlement amount be disbursed as following: 40% or $1.2 million (40%) be allocated to attorney's fees, along with an additional $180,525.81 for litigation costs. (*Id.* at 17); $1 million be allocated to establish periodic payments through a structured settlement annuity on Plaintiff's behalf, resulting in $3,030 monthly payments for Plaintiff's life, guaranteed for 40 years (or 480 payments) beginning on August 1, 2025, increasing at a rate of 2% compounded annually, with the last guaranteed payment on July 1, 2065. (*Id.* at 17-18); $579,474.19 be allocated to establish a pooled special needs trust for Plaintiff. (*Id.*). The motion states that this special needs trust will allow Plaintiff to maintain government benefits and will be structured to cover the costs of the trust, the expenses of estate planning, payment of a Medi-Cal lien (if necessary), and purchase of a house for Plaintiff. (*Id.* at 18).

Further, as a personal injury claim is involved, the motion addresses the nature of Plaintiff's injuries, noting that he will require lifetime assistance to care for himself, that he suffers from permanent injuries, experiences symptoms including "epileptic seizures, confusion, inability to multitask, periods of anger, difficulty learning new tasks, memory impairment, both short and long term – he has no recollection of any events after age 13 or 14, bipolar disorder, depression, elevated sensitivity to noise, diminished sense of taste, and is physically handicapped." (*Id.* at 6).

Regarding the requirement that physician or other similar reports be provided to the Court, Plaintiff has attached a neuropsychological evaluation report completed by Dr. Randall C. Epperson that generally addresses Plaintiff's history, mental abilities, and treatment needs. (ECF

No. 80-1, p. 21). Likewise, Plaintiff has provided a "Special Needs Analysis" prepared by Jaclyn Kehoe, RN, BSN regarding Plaintiff's future care needs. (ECF No. 88, p. 15).

As for the disclosure of attorney's interest under Local Rule 202(c), Attorney Loyst P. Fletcher provides a declaration in support of the motion, stating as follows:

> My firm was retained by Karen Norris, Plaintiff's maternal grandmother and designated guardian ad litem, who was providing Plaintiff food, clothing, shelter and all aspects of his needs. The terms under which my firm became employed provide that counsel for Plaintiff shall receive 40% of the gross amount(s) recovered if recovery is made after trial or mediation. Of the total attorney fee, 10% will be paid to co-counsel Stuart R. Chandler, APC. This does not increase the fee paid by the client but represents a division of fees agreed upon by counsel and their client. Counsel did not become involved at the instance of the County – either directly or indirectly. None of Plaintiff's counsel stand in any relationship to the County. None of Plaintiff's counsel have received or expect to receive any compensation other than the fees and costs requested as part of the accompanying Motion.

(ECF No. 88-3, p. 4).

Karen Norris, the guardian ad litem and Plaintiff's grandmother, has provided a declaration supporting the requested 40% fee award. (ECF No. 82, p. 4).

Upon review, the Court concludes that Plaintiff has provided the information required by the Court's Local Rules.

### B. Fairness and Reasonableness

The Court now considers whether the $3 million net settlement amount "is fair and reasonable in light of the facts of the case, [Plaintiff's] claims, and typical recovery by [other] plaintiffs in similar cases." *Robidoux*, 638 F.3d at 1182. As to this issue, the petition states as follows:

> Based upon a review of the following civil rights settlements in cases involving minors and disabled adults, Plaintiffs submit that the proposed settlement in this case is fair and reasonable: *In James Smith, a handicapped adult, et al. v. City of Stockton, et al*, 185 F. Supp. 3d 1242 (2016) (E.D. Cal. 2016), the court approved a settlement of $307,500 for a developmentally delayed adult and his minor sister, who witnessed the events, for civil rights claims against the city and a police officer, alleging that the officer unlawfully tackled him, restrained him, sicced his police dog on him, and arrested him without probable cause. Order In *Map v. City of Bakersfield*, 2009 WL 179771 (E.D. Cal. 2009), the court approved a settlement of $95,000 for a minor who was attacked by a police dog and bitten on his face and ear in violation of the child's Fourth and Fourteenth Amendment rights. In *Toscano v. City of Fresno*, 2017 WL 2483119 (E.D. Cal. 2017), the court approved a total settlement in the amount of $675,000 for a minor who brought civil rights

7

>claims against the city for the wrongful death of his father, who was killed when a Fresno City police officer ran him over during a high-speed pursuit while failing to use his patrol vehicle's emergency lights.

(ECF No. 80, p. 8).

The Court has located the following cases in addition to those provided by Plaintiff. In *Rainey v. Cnty. of San Diego*, the Court issued findings and recommendations, which were ultimately adopted, concluding that a $9.5 million dollar settlement was fair and reasonable for an incompetent adult who suffered brain injuries and alleged "claims for deliberate indifference to a substantial risk of harm, liability for unconstitutional custom or practice, professional negligence, failure to summon medical care, and negligence." *Rainey v. Cnty. of San Diego*, No. 19CV1650-L(BLM), 2023 WL 2626274, at *1 (S.D. Cal. Mar. 24, 2023), *report and recommendation adopted*, 2023 WL 2669867 (S.D. Cal. Mar. 28, 2023). Although the amount settled in *Rainey* is approximately 3 times higher than this case, the injuries and medical needs at issue were more severe, with the plaintiff being "left incapacitated," and requiring "24hr/day skilled nursing care for all aspects of her care management, as well as mobility and activities of daily living." *Id.*

In *A.M.L. v. Cernaianu*, the "[p]laintiffs allege[d] that, as a result of Defendants' negligence, A.M.L. suffered severe and permanent physical and neurological injuries during his birth." *A.M.L. v. Cernaianu*, No. LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *1 (C.D. Cal. Apr. 1, 2014). The brain injuries the minor suffered were permanent, a special needs trust was requested, in part, because he was dependent on others for care in all areas of daily living, and the court approved the gross settlement amount of $1,875,000. *Id.* at *2, 5. Here, Plaintiff likewise suffered permanent brain injuries, necessitating a special needs trust and some level of care from other, and the settlement amount here is more than $1 million higher.

*In H.S. by & through Parde v. United States*, the minor Plaintiff "sustained serious injuries, including a skull fracture, traumatic brain injury, subdural hematoma, and three spinal fractures." *H.S. by & through Parde v. United States*, No. 3:17-CV-02418-BTM-KSC, 2020 WL 7130506, at *1 (S.D. Cal. Dec. 4, 2020). Because of such injuries, the minor would "continue to require medical care and monitoring, speech therapy, physical therapy, and occupational therapy." *Id.* The Court approved a gross settlement of $3 million, noting that it had "independently surveyed recent settlements in California and the Ninth Circuit in cases involving

8

minors who suffered traumatic brain injuries and/or spinal fractures due to negligence or allegedly dangerous conditions, and [found] the Settlement to be within the average amount recovered." *Id.* at *3 & n.2 (collecting cases). Here, Plaintiff's gross settlement amount for his injuries from the attack, primarily brain related, is the same as in the *H.S.* case.

In short, after considering the facts, Plaintiff's claims, and recoveries in analogous cases, the Court concludes that the $3 million gross settlement amount is fair and reasonable.

### C. Disbursement of funds

Having determined the $3 million total settlement award is fair and reasonable, the Court considers the disbursement of the funds, beginning with the $1 million annuity.

#### 1. Annuity

As noted above, Local Rule 202(e) requires settlement funds to be disbursed pursuant to state law or "such other order as the Court deems proper for the protection of the minor or incompetent person." California law provides multiple ways to distribute settlement funds, either where there is a conservatorship of the estate of an incompetent person or not. Cal. Prob. Code § 3611(b) (providing that "[i]n any case described in Section 3610," *i.e.*, where there is no conservatorship of the estate of a disabled person, a court may, among other options, order that funds be deposited "in a single-premium deferred annuity, subject to withdrawal only upon the authorization of the court"); § 3602(c)(1) (noting in cases where there is a conservatorship of the estate of a disabled person, the conservator may petition that money "be deposited . . . in a single-premium deferred annuity, subject to withdrawal only upon authorization of the court").

Under California law, a "[s]ingle-premium deferred annuity" is defined as

> an annuity offered by an admitted life insurer for the payment of a one-time lump-sum premium and for which the insurer neither assesses any initial charges or administrative fees against the premium paid nor exacts or assesses any penalty for withdrawal of any funds by the annuitant after a period of five years.

Cal. Prob. Code § 1446.

Here, Plaintiff states that the annuity contract will be issued by The Prudential Insurance Company of America. Further, he provides the declaration of John Vaclavik, a structured settlement broker who is involved with the purchase of the annuity at issue, to confirm that the annuity complies with § 1446. (ECF No. 88, p. 5; ECF No. 88-1, p. 2).

9

Upon consideration, the Court concludes that the purchase of an annuity is proper.

## 2. Special needs trust

Under Cal. Prob. Code § 3604(b), a special needs trust may be established if a court determines all of the following criteria are met.

> (1) That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap.
>
> (2) That the minor or person with a disability is likely to have special needs that will not be met without the trust.
>
> (3) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability.

Cal. Prob. Code § 3604(b)(1)-(3); *see* § 3602(d) and § 3611(c) (both provisions providing for money to be paid to special needs trust under § 3604).

As for the first requirement—whether Plaintiff has a disability that substantially impairs his ability to provide for his own care or custody and constitutes a substantial handicap—the Court notes that the motion states that Plaintiff has a severe brain injury and suffers from the following symptoms:

> He exhibits epileptic seizures, confusion, inability to multitask, periods of anger, difficulty learning new tasks, memory impairment, both short and long term – he has no recollection of any events after age 13 or 14, bipolar disorder, depression, elevated sensitivity to noise, diminished sense of taste, and is physically handicapped. Ernest cannot drive and has difficulty with gait and balance, especially when it comes to navigating steps and uneven surfaces. He has been prescribed Levetiracetam, an epileptic seizure medication that he will have to take for the rest of his life. Due to his cognitive impairment, Ernest cannot remember to take his medication or maintain proper hygiene.

(ECF No. 80, p. 6). And the declaration of counsel states that Plaintiff "will require lifetime assistance to care for himself." (ECF No. 80-1, p. 4). Additionally, the report provided by Jaclyn Kehoe, RN, BSN, details the type of care that Plaintiff requires, including help with daily tasks like cooking, cleaning, transportation, financial management, shopping, etc. (ECF No. 88, p. 18). While the report notes that the cost of paid healthcare services will depend on whether Plaintiff is approved for "IHSS services," the relative value of services provided by Plaintiff's mother are estimated at $55,999.74 annually, which would be about $4,666 monthly. (*Id.* at 23).

As for the second requirement—whether Plaintiff is likely to have special needs that will

10

not be met without the trust—the Court notes that the motion states that the special needs trust will be established, in part, to make sure the Plaintiff maintains his access to government benefits.

> Ernest receives SSI benefits. His benefits are "needs based" and he will become ineligible for SSI payments and for Medi-Cal benefits if he has more than $2,000.00 at the end of any given month.
>
> The Social Security Administration allows beneficiaries to maintain their benefits if their assets are placed into a "pooled special needs trust" Such trusts impose particular limitations on how the trust corpus is allowed to be spent. The spending restrictions, record keeping, and biannual reporting requirements make these trusts too difficult for most lay people to administer.

(ECF No. 80, pp. 17-18).

As to the third requirement—whether the money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of Plaintiff—the Court notes that the motion states as follows:

> To ensure the proper administration of the special needs trust for Ernest's benefit, it is respectfully requested that the court order a disbursement of $579,474.19 to Legacy Enhancement Trust to cover the costs of setting up a PSNT for Ernest, the expenses of disability estate planning expert Bryan Beard of Hunsberger Dunn, in preparing the petition to create the trust, funds available to pay, if required, Medi-Cal to satisfy its lien, funds to purchase a residence for Mr. Brock, and funds to meet initial expenses in setting up the home.

(*Id.* at 18).

As for the Medi-Cal lien, the supplement states as follows:

> A request for a final lien amount was submitted to Medi-Cal soon after the mediation. In response to that request, on May 28, 2025, a Medi-Cal representative contacted counsel's office and advised that Medi-Cal paid a total of $41,649.85. The representative further advised that Medi-Cal would seek reimbursement in the amount of $29,064.85. A Medi-Cal representative confirmed the final lien request via email dated May 29, 2025. (Exhibit A). We hope to achieve a greater reduction – or even a waiver – through negotiations with Medi-Cal and/or a hearing in the Fresno County Superior Court.

(ECF No. 88, p. 4).

Upon consideration of the above circumstances, the Court concludes that the creation of a special needs trust is warranted.

### 3. Attorney's fees and costs

Plaintiff's attorneys seek 40% of the gross settlement or $1.2 million.[5] Before addressing

---

[5] Of the 40% amount, 10% is to be allocated to co-counsel Stuart R. Chandler. (ECF No. 80-1, p. 9).

11

the substance of this request, the Court will determine the appropriate legal standards.

Plaintiff's counsel argues that, under *Robidoux*, the Court should not evaluate the reasonableness of the request for attorney's fees at all (ECF No. 80, p. 13; ECF No. 88, pp. 10-11), relying on the Ninth Circuit's decision in *Robidoux v. Rosengren,* 638 F.3d 1177 (9th Cir. 2011). In *Robidoux*, the Ninth Circuit held that the district court erred in considering the proportion of the settlement designated for attorney's fees in assessing whether a settlement involving a minor was fair and reasonable. It stated that "the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1181-1182.

However, later courts have limited *Robidoux*'s instruction to situations where the settlement agreement itself specified the amount of attorney's fees separate from the compensation for a plaintiff's claims, and have declined to apply *Robidoux* where the settlement amount does not specify the allocation between attorney and plaintiff, such as in the following case:

> This case has a key distinguishing feature from the facts presented in Robidoux. In Robidoux, the district court had denied in part the parties' motion to approve the proposed settlement, which included as a material term that plaintiffs' counsel would recover approximately 56% of the settlement amount as attorneys' fees. 638 F.3d at 1182. The Ninth Circuit found the district court abused its discretion in denying in part the motion based on the amount of attorneys' fees alone because it placed "undue emphasis on the amount of attorneys' fees provided for in [the] settlement." Id. at 1181.
>
> Here, by contrast, the attorneys' fees at issue are not a material term of the Settlement Agreement, nor is there an express provision for attorneys' fees in the Settlement Agreement. In approving the settlement between Plaintiffs and Defendants, the Court has considered only "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases" as required by Robidoux. Id. at 1182. As stated below, the Court approves the settlement between Plaintiffs and Defendants as reasonable, consistent with Robidoux, considering only the reasonableness of the net recovery for each minor Plaintiff.
>
> The amount of attorneys' fees at issue here is an independent matter, the obligation

---

Because this division does not alter the amount available to Plaintiff, the Court has not assessed this division of attorney's fees. However, given that the Court is recommending discounting the recovery from the contractual amount, nothing in this order precludes the attorneys from reconsidering the allocation of the attorney's fees among themselves.

12

arising from the retainer agreements between Plaintiffs and their counsel. The Court evaluates the request for attorney's fees by Plaintiffs' counsel in light of its "special duty to safeguard the interests of litigants who are minors." Castillo v. Cty. of L.A., No. CV 14-07702-BRO (Ex), 2017 WL 5188576, *3 (C.D. Cal. Mar. 6, 2017) (quotation marks and citation omitted); See Castillo v. Cty. of L.A., No. CV 14-07702-BRO (Ex), 2017 WL 5172172, at *5 (C.D. Cal. Jan. 6, 2017) (evaluating reasonableness of request for attorneys' fees in case involving a minor post-Robidoux, consistent with Central District of California's Local Rule 17-1.4's requirement that the court fix the amount of attorneys' fees in any case involving a minor); Popal v. Nat'l Passenger R.R. Corp., No. 15-cv-00553-JSW (KAW), 2016 WL 9114149, at *3 (N.D. Cal. Oct. 24, 2016) (evaluating reasonableness of request or attorneys' fees in connection with petition for minor's compromise post-Robidoux).

*A.G.A. v. Cnty. of Riverside*, No. EDCV 1900077-VAP (SPx), 2019 WL 2871160, at *3-4 (C.D. Cal. Apr. 26, 2019) (reducing amount of attorney's fees in minor settlement from the 33% request to 25%, stating "the relevant factors set forth in California Rule of Court 7.955California Rule of Court 7.955 do not weigh in favor of granting Plaintiffs' counsel's request for 33% of the gross settlement fund. Although counsel obtained a favorable result for his clients and should be credited with that achievement, the Court finds a reasonable attorney's fee for the services of Plaintiffs' counsel is 25% of the settlement fund, i.e., after reimbursement of necessary costs").

The Court finds this line of authority persuasive. When the settlement agreement provides a gross settlement without an allocation between attorney's fees and plaintiff recovery, the allocation of that settlement is left to the attorneys and the plaintiff. Where the plaintiff is an incompetent adult (or minor), that plaintiff is not in an equal position to negotiate a fair allocation of that settlement. It thus poses a situation where the interests of the incompetent person may not be adequately protected, and the Court is needed to safeguard the incompetent person's interests.

Here, the amount of attorney's fees here is not a material term of the settlement agreement; rather, the agreement provides for a gross settlement amount, with the understanding that as consideration for this amount, Plaintiff agrees to "fully release and discharge" his claims, attorney's fees, and costs. (ECF No. 80-1, p. 15). The division of that $3 million between attorneys and Plaintiff was thus the result of an agreement between Plaintiff and his counsel, based on a contingency fee agreement executed at the beginning of the case. The Court thus believes that it should also assess the reasonableness of that agreement in its role of safeguarding the interests of the incompetent adult.

13

When evaluating a reasonable amount of attorney's fees, "[t]ypically, courts in the Eastern District of California consider 25 percent of the recovery as the benchmark for attorney's fees in contingency cases involving minors." *B. R. L. by & through Lara v. Clinica Sierra Vista*, No. 1:21-CV-01445-JLT-CDB, 2024 WL 4502142, at *3 (E.D. Cal. Oct. 16, 2024), *report and recommendation adopted*, No. 1:21-CV-01445 JLT CDB, 2024 WL 4753989 (E.D. Cal. Nov. 12, 2024). The Court concludes that this same benchmark should apply to incompetent persons, who, like minors, require the Court to exercise its special duty to protect their interests. *See D.C. by & through Murphy v. Modesto City Sch.*, No. 1:22-CV-01481-HBK, 2023 WL 6060044, at *5 (E.D. Cal. Sept. 18, 2023) (noting 25% benchmark applicable to minors in case with incompetent person).

Besides arguing that the Court should not assess the reasonableness of the fee request at all, counsel also argues that the 40% attorney's fees allocation, which results in $1.2 million in attorney's fees, is warranted because of the extensive work counsel did on this case, the difficulty that the issues presented, counsel's experience in civil rights lawsuits, and the results they obtained for Plaintiff. (ECF No. 80 pp. 14-17, ECF No. 88, pp. 6-11). Specifically, counsel states:

> Plaintiffs' counsel's efforts resulted in a remarkable $3,000,000 recovery under exceptionally difficult circumstances—precisely the kind of representation Rule 17(c) envisions, and Section 1988 encourages. This case in particular involved a substantial amount of risk and was vigorously litigated by a hardworking team of attorneys from the Fletcher and Chandler law firms. Plaintiff's counsel obtained a spectacular success for their client in this case. As a result of the attorneys' efforts, Ernest will enjoy payments of $3,030 increased 2% per annum for the remainder of his life.

(ECF No. 88, p. 10).

However, Plaintiff's counsel did not provide any billing records to support their work on the case. In the declaration of Attorney Loyst P. Fletcher, counsel states as follows:

> As indicated in my declaration in support of Plaintiff's Motion for Settlement Approval, the firms do not keep contemporaneous records of the time we spend on contingency fee cases. While I indicated to the Court during the April 25, 2025 hearing that my firm uses a cloud management system that contemporaneously records time expended in my cases, when I retrieved the time records from the system, I discovered that when the office switched cloud management services from Smokeball to Clio in April of 2023, the time recorded for work performed on the present case did not interface from system to system. Notwithstanding, from a review of the records, my educated estimate of the time spent on this case exceeds 1200 hours.

14

(ECF No. 88-3, p. 2). Thus, the Court has no billing records to assess the amount of work performed or to calculate the hourly award to assess its reasonableness. Counsel also provides no information or calculations to support the estimate of 1200 hours of work.

Even applying the 1200 estimate, the requested attorney's fees would result in an hourly rate of $1000 per hour, for all attorneys working on the case regardless of experience level. This is significantly higher than what the Court generally considers to be a reasonable hourly rate in the Fresno community, even with highly experienced counsel. *See Beard v. Cnty. of Stanislaus*, No. 1:21-CV-00841-ADA-SAB, 2023 WL 199200, at *13 (E.D. Cal. Jan. 17, 2023) ("In the Fresno Division of the Eastern District of California, across a variety of types of litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of experience."). Furthermore, counsel states that, "wherever possible, lead counsel, Loyst P. Fletcher, assigned tasks to his associate attorneys, and relied on his paralegal and support staff as well." (ECF No. 88, p. 8). Thus, even according to counsel's calculations, this allocation would result in an hourly fee of $1000 for associate and paralegal work as well as lead counsel's own work.

Moreover, while the case was heavily litigated at the discovery stage, there was not a significant amount of motion practice, and the length of the proceedings was in large part due to the judicial emergency in this District, which resulted in the dispositive motions being left pending for approximately three years before the parties settled the case.

Furthermore, while counsel asks this Court to look only to the reasonableness of the net recovery to Plaintiff of approximately $1,579,000, it is difficult to say in this case that such an amount fully compensates Plaintiff for the claims in this case. After all, Plaintiff suffered extensive physical and emotional injuries from the assault itself, and, as discussed above, will require lifetime care and support. Full compensation in this type of situation defies easy calculation. Thus, while the Court believes that the overall settlement is fair and reasonable especially given the risks inherent in litigation, it cannot say that the proposed net payment to Plaintiff fully compensates him for his past suffering and future expenses. Certainly, Plaintiff

will benefit from a greater allocation from that settlement.

Thus, while appreciating the extensive work by Plaintiff's counsel and the favorable result for Plaintiff, the Court believes that the allocation for attorney's fees should be reduced to 33% of the gross settlement amount, *i.e.*, $990,000. Such an allocation is still well above the benchmark of 25%, discussed above. Moreover, using the 1200 hour estimate, this will result in an effective hourly rate of $825 for all counsel involved, regardless of experience level, which is about double the high-end of typical reasonable hourly rates.

Thus, the Court will recommend that Plaintiff's counsel be awarded 33% of the gross settlement amount (or $990,000) rather than 40% (or $1.2 million) requested by counsel.

However, the Court will recommend awarding the full amount of requested costs, $180,525.81, which appear to be reasonable. (ECF No. 80-1, p. 67).

### 4. Final considerations

As noted above the Court is recommending that attorney's fees be reduced from $1.2 million to $990,000, a decrease of $210,000. And Plaintiff's mother and grandmother have rescinded their request for $40,000 from the settlement. This leaves an additional $250,000 total to allocate from the settlement. The Court will recommend that this additional money be used to fund the $1 million annuity, for a new total annuity price of $1,250,000.

### V. FINDINGS AND RECOMMENDATIONS

For the reasons given above, IT IS RECOMMENDED as follows:

1. The motion for approval of proposed settlement (ECF Nos. 80, 88) be granted, in part.
2. The gross settlement between Defendants and Plaintiff of $3,000,000 be deemed fair and reasonable.
3. The settlement amount be apportioned as follows:
   a. Attorney's fees of $990,000 to Plaintiff's counsel;
   b. Litigation Costs of $180,525.81;
   c. Payment of $1,250,000 to PASSCorp to fund future periodic payments through a structured settlement annuity contract that the periodic payments will, in turn, be payable to Legacy Enhancement Trust as Trustee ("TTEE") fbo Ernest O'Neil Rankin Brock in monthly payments for life;

    d. Payment of $579,474.19 to Legacy Enhancement Trust to establish a Pooled Special Needs Trust ("PSNT"). This includes the fees to be charged by the law firm of Hunsberger Dunn that works with Legacy Enhancement Trust in establishing the trust; funds available to pay, if required, Medi-Cal to satisfy its lien, funds to purchase a residence for Plaintiff and funds to meet initial expenses in setting up the home. Pending further order from this Court or from a state court having oversight of those funds, Legacy may disburse from the trust only those amounts needed to establish and maintain the trust.

4. Defendant be directed to pay the settlement amount to Plaintiff's counsel within thirty days of the District Judge's ruling on the motion.

5. Plaintiff's counsel be directed to allocate that settlement amount as set forth in this order no later than 30 days from receipt.

6. The parties be ordered to submit an appropriate dispositional document within seven days after Defendant's payment of the settlement amount.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 5, 2025**       /s/ Erica P. Grosjean
                                           UNITED STATES MAGISTRATE JUDGE